UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JORGE OTANO,

        Petitioner,

v.                                    Case No:  2:17-cv-467-FtM-38CM
                                          Case No.   2:13-cr-89-FtM-38CM

UNITED STATES OF AMERICA,

        Respondent.

_____/

**OPINION AND ORDER**[1]

Before the Court is Petitioner Jorge Otano's Motion Under 28 U.S.C. § 2255 to

Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody constructively

filed on August 14, 2017.[2]   (Cr. Doc. 232; Cv. Doc. 1).[3]  The United States filed a

Response in Opposition (Cv. Doc. 7), to which Otano filed a Reply (Cv. Doc. 9).  Upon

---

[1] Disclaimer:  Documents filed in CM/ECF may contain hyperlinks to other documents or websites.   These hyperlinks are provided only for users' convenience.   Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees.   By allowing hyperlinks to other websites, this Court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their websites. Likewise, the Court has no agreements with any of these third parties or their websites. The Court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the Court.

[2] The Clerk received and docketed Otano's § 2255 motion on August 18, 2017.  Under the "mailbox rule," a prisoner's motion is deemed filed on the date that he signed, executed, and delivered his petition to prison authorities for mailing.  *Adams v. United States*, 173 F.3d 1339, 1341 (11th Cir. 1999).  Because the motion does not contain a date-stamp indicating the date Petitioner delivered the motion to prison officials, the Court deems the date of filing to be August 14, 2017, the date Petitioner certifies he placed the motion in the prison mailing system.  *See* Cv. Doc. 1 at 14.

[3] The Court will refer to the civil case docket as "Cv. Doc." and the underlying criminal docket, 2:13-cr-00089-SPC-CM-1, as "Cr. Doc."

review of the pleadings, the record, and controlling law, Otano's § 2255 motion is due to be denied.

## FACTUAL BACKGROUND

On April 30, 2014, a federal grand jury returned a superseding ten-count Indictment against Petitioner and his co-defendant/wife, Martha Otano.[4] (Cr. Doc. 99). Count One charged Otano with conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846. (Id. at 1). Count Two charged Otano with conspiracy to evade transaction reporting requirements in violation of 18 U.S.C. § 371. (Id. at 2-10). Counts Three through Five charged Otano with structuring transactions to evade reporting requirements in violation of 31 U.S.C. §§ 5324(a)(3), (d)(2). (Id. at 10-11). Count Six charged Otano with conspiracy to launder monetary instruments in violation of 18 U.S.C. § 1956(h). (Id. at 11). Counts Seven through Ten charged Otano with engaging in monetary transactions in criminally derived property in violation of 18 U.S.C. §§ 1957 and 2. (Id. at 12).

Otano and his wife were initially represented by privately retained counsel, Lee Hollander. (Cr. Doc. 34). On August 27, 2013, the Court granted Otano's Motion for Substitution of Counsel (Cr. Doc. 51) and agreed to the Stipulation for Substitution of Counsel (Cr. Doc. 52) substituting Landon P. Miller as counsel of record for Otano in Mr. Hollander's stead. (Cr. Doc. 53). On May 25, 2014, Otano entered into and executed a written plea agreement with the government to plead guilty to Counts One, Two, Four, Five, Seven, and Ten of the superseding Indictment. (Cr. Doc. 106). On May 29, 2014,

---

[4] A federal grand jury initially returned an eight-count Indictment against Petitioner and his wife on June 26, 2013. (Cr. Doc. 3).

at the Change of Plea Hearing, Otano refused to plead and the case was placed on the July 2014 trial term. (Cr. Doc. 110). That same day, Attorney Miller moved to withdraw as counsel. (Cr. Doc. 111 at 4). In his motion, Miller detailed his conversations with Otano, explaining that Otano requested and the Government initially proposed to Otano pleading to a charging Information, which Otano subsequently rejected. (*Id.* at ¶¶ 3-5). Thereafter, after Otano was arraigned on the superseding indictment on May 14, 2014, Attorney Miller, an interpreter, and counsel for the Government met with Otano to discuss a plea deal. (*Id.* at ¶ 6). Attorney Miller subsequently negotiated a plea deal with the Government and, along with the interpreter, met with Otano to review the proposed plea deal and execute the same on May 23, 2014. (*Id.* at ¶ 7). After initialing the first 20 pages of the proposed plea agreement, Otano decided to go no further. (*Id.*). Later that day, Attorney Miller received a telephone call from Otano's brother advising that "Otano once again wanted to go forward with the plea." (*Id.* at ¶ 8). On May 25, 2014, Attorney Miller again met with Otano and discussed with Otano whether he wanted to plea and Otano stated he did and he signed the plea agreement. (*Id.* at ¶ 9). On May 29, 2014, prior to the change of plea hearing, Otano made statements to Attorney Miller "that were inconsistent with any conversation" Miller had previously had with Otano. (*Id.* at ¶ 10). Otano "also made statements to [Miller] that [Miller] had not presented any plea agreements in conjunction with the indictment or the proposed information." (*Id.*). On June 4, 2014, after an *in camera* hearing, the Court granted Attorney Miller's motion to withdraw, and appointed Attorney Allen Kaufman ("Kaufman") as counsel for Otano. (Cr. Docs. 114, 115, 118). On February 11, 2015, Otano pled guilty in open court to Counts

One through Ten of the superseding Indictment without the benefit of a written plea agreement. (Cr. Docs. 164; 172).

On October 2, 2015, the Court varied below the Guidelines range and sentenced Otano to 144 months imprisonment for Count One, 60 months of imprisonment for Count Two, and 120 months imprisonment for Counts Three through Ten, all to be served concurrently.[5] (Cr. Doc. 203). The Court also sentenced Otano to three years of supervised release and imposed a $15,000 fine and a $1,000 special assessment. (Id.). Judgment was entered on October 6, 2015. (Id.).

On October 14, 2015, counsel for Otano filed a Notice of Appeal. (Cr. Doc. 205). On direct appeal, counsel for Otano argued his sentencing was unreasonable because it (1) created a sentencing disparity and (2) was otherwise greater than necessary to serve the purpose of sentencing under 18 U.S.C. § 3553(a). (Id.) The Eleventh Circuit affirmed Otano's sentencing on February 9, 2017. United States v. Otano, 679 F. App'x 776, 781 (11th Cir. 2017).

On August 18, 2017, Otano filed the instant § 2255 motion. (Cr. Doc. 232; Cv. Doc. 1). Respondent concedes that Otano's § 2255 motion is timely, and the Court agrees.[6] (Cv. Doc. 7 at 12).

---

[5] Under the United States Sentencing Guidelines, Otano's Criminal History Category was calculated at a Category I, with a total offense level of 42, yielding an advisory sentencing range of between 292-365 months in prison. (Cr. Docs. 185 at 25-26, 38; 221 at 174).

[6] Under the 28 U.S.C. § 2255(f)(1), a habeas petitioner may not be filed more than one year from "the date on which the judgment of conviction becomes final." Petitioner's judgment of conviction became final on May 10, 2017, when the time for seeking certiorari review had expired. See Kaufmann v. United States, 282 F.3d 1336, 1338-39 (11th Cir. 2002) (stating if a petitioner does not seek a writ of certiorari, conviction becomes final upon expiration of the ninety-day period for seeking certiorari review). Thus, he had until May 10, 2018, to file his § 2255 motion.

Liberally construed,[7] Otano raises four separate grounds of constitutionally ineffective assistance of counsel in his § 2255 motion. (Cv. Doc. 1). In Ground One, Otano asserts counsel was ineffective in failing to file a petition for rehearing, rehearing *en banc*, or petition for writ of certiorari subsequent to the denial of his appeal. (Cv. Doc. 1 at 4). In Ground Two, Otano claims counsel rendered ineffective assistance for failing to provide an interpreter and effectively communicate with him. (Cv. Doc. 1 at 5). Additionally, in passing, Petitioner claims counsel's primary concern was to receive his attorney's fees and money to pay his investigator and, thus, counsel held a financial conflict of interest. (Cv. Doc. 1 at 23). In Ground Three, Otano alleges counsel erred in failing to negotiate or advise Otano of any plea agreement offer by the Government. (Cv. Doc. 1 at 8). In Ground Four, Otano argues counsel performed ineffectively in failing to advise the Government of his willingness to cooperate. (Cr. Doc. 232 at 9; Cv. Doc. 1 at 9). Otano incorporates a memorandum in support of the grounds in his motion and appends three exhibits in support thereof. (Cv. Doc. 1 at 15-30; Cv. Doc. 1-1; Cv. Doc. 1-2; Cv. Doc. 1-3).

## LEGAL STANDARDS

### A. Evidentiary Hearing and Appointment of Counsel

A district court shall hold an evidentiary hearing on a habeas corpus petition "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "If the petitioner alleges facts, that

---

[7] The Court is required to resolve all claims for relief raised in a § 2255 motion, regardless of whether habeas relief is granted or denied. *See Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir. 1992) (en banc); *see also Gay v. United States*, 816 F.2d 614, 616 n. 1 (11th Cir. 1987).

if true, would entitle him to relief, then the district court should order an evidentiary hearing and rule on the merits of his claim." *Griffith v. United States*, 871 F.3d 1321, 1329 (11th Cir. 2017) (quoting *Aron v. United States*, 291 F.3d 708, 714-15 (11th Cir. 2002)). A petitioner need only allege, not prove, nonconclusory facts that would entitle him to relief. *See Griffith*, 871 F.3d at 1329 (quoting *Aron*, 291 F.3d 708, 714-15 (11th Cir. 2002)).

If, however, the allegations are "affirmatively contradicted by the record" and "patently frivolous," the Court is not required to hold an evidentiary hearing. *Id.* Nor is the Court required to hold a hearing where the claims are "conclusory allegations unsupported by specifics." *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 745 (11th Cir. 2010). To merit an evidentiary hearing on an ineffective assistance of counsel claim, a petitioner must allege specific facts that would show <u>both</u> (1) that counsel performed deficiently and (2) this deficient performance prejudiced the petitioner. *See Griffith*, 871 F.3d at 1329. The Court finds that the record refutes Otano's allegations and/or his claims are without merit. Thus, an evidentiary hearing is not required.

Because petitioner's motion for an evidentiary hearing is denied, appointment of counsel is not required under Rule 8(c), Rules Governing Section 2255 Proceedings for the United States District Court and Petitioner is not otherwise entitled to appointment of counsel in this case. *See Barbour v. Haley*, 471 F.3d 1222, 1227 (11th Cir. 2006) (stating there is no Sixth Amendment right to counsel in post-conviction collateral proceedings); *see also Schultz v. Wainwright*, 701 F.2d 900, 901 (11th Cir. 1983) ("Counsel must be appointed for an indigent federal habeas petitioner only when the interest of justice or due process so require.").

## B. Ineffective Assistance of Trial Counsel

The legal standard for ineffective assistance of counsel claims in a habeas proceeding is well established. To prevail on a claim of ineffective assistance of counsel, a habeas petitioner must demonstrate both that (1) counsel's performance was deficient because it fell below an objective standard of reasonableness and (2) prejudice resulted because there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *See Hinton v. Alabama*, 571 U.S. 263, 272-73 (2014) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984) and *Padilla v. Ky.*, 559 U.S. 356, 366 (2010)). "Because a petitioner's failure to show either deficient performance or prejudice is fatal to a *Strickland* claim, a court need not address both *Strickland* prongs if the petitioner fails to satisfy either of them." *Kokal v. Sec'y, Dep't of Corr.*, 623 F.3d 1331, 1344 (11th Cir. 2010) (citations omitted).

The proper measure of attorney performance is "simply reasonableness under prevailing professional norms" considering all the circumstances. *Hinton*, 571 U.S. at 273 (internal quotations and citations omitted). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (stating courts must look to the facts at the time of counsel's conduct). This judicial scrutiny is highly deferential, and the Court adheres to a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 689-90. To be objectively unreasonable, the performance must be such that no competent counsel

would have taken the action. *See Rose v. McNeil*, 634 F.3d 1224, 1241 (11th Cir. 2011); *see also Hall v. Thomas*, 611 F.3d 1259, 1290 (11th Cir. 2010). Thus, an attorney is not ineffective for failing to raise or preserve a meritless issue. *See United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992); *see also Ladd v. Jones*, 864 F.2d 108, 109-10 (11th Cir. 1989).

## C. Procedural Default

Although not the model of clarity, it appears that Respondent suggests that Otano's claims are procedurally barred because he failed to assert them on direct appeal. (Cv. Doc. 7, pp. 13-18). The Court disagrees. Claims of ineffective assistance of counsel are not subject to procedural default. *See Massaro v. United States*, 538 U.S. 500, 504 (2003) (holding that claims of ineffective assistance of counsel "may be brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal."). The Court, therefore, will address the merits of each ineffective assistance of counsel claim raised by Otano.

## DISCUSSION

## A. Ground One

In Ground One, Otano asserts Attorney Kaufman rendered constitutionally deficient performance when he failed to file a petition for rehearing, rehearing *en banc*, or a petition for writ of certiorari. (Cv. Doc. 1 at 16). Specifically, Otano asserts Kaufman erred in failing to argue his sentencing was unreasonable on further review. (Cv. Doc. 1 at 16-20). In support, Otano reasserts the grounds he raised on direct appeal in challenging his sentence. (Cv. Doc. 1 at 18-20). Notably, Otano does not allege that he ever requested Kaufman to seek further review. Respondent maintains that Petitioner

cannot obtain review of Ground One because he merely re-hashes the same sentencing claims he made on direct appeal. (Cv. Doc. 7 at 18-19).

On appeal, Otano argued his sentence was substantively unreasonable because it: (a) created an unwarranted sentencing disparity when compared to a similarly situated defendant; and (b) was otherwise greater than necessary to serve the purposes of sentencing under 18 U.S.C. § 3553(a). *See United States v. Otano*, 679 F. App'x 776, 777 (11th Cir. 2017). The Eleventh Circuit affirmed Otano's sentence, finding: (a) Otano's 144-month sentence was reasonable; and (b) no sentence disparity occurred because his case was factually distinguishable from the alleged similarly situated individual. *See id.* at 779-781. Petitioner now attempts to fault Kaufman for failing to assert these same arguments in a petition for rehearing, rehearing *en banc*, or petition for writ of certiorari. (Cv. Doc. 1 at 16-20). However, because the Eleventh Circuit already rejected Otano's sentencing claims, he cannot disguise these claims as a collateral attack and re-litigate them here because these claims were already considered and rejected on direct appeal by the Eleventh Circuit. It is well settled that a "district court is not required to reconsider claims of error that were raised and disposed of on direct appeal." *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000) (citing *United States v. Rowan*, 663 F.2d 1034, 1035 (11th Cir. 1981)). "[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be re-litigated in a collateral attack under section 2255." *Id.* (citing *United States v. Natelli*, 553 F.2d 5, 7 (2d Cir. 1977)).

In the alternative, Ground One fails because there is no constitutional right to the assistance of counsel in seeking a writ of certiorari. *See Ross v. Moffitt*, 417 U.S. 600, 616-17 (1974) (stating there is no right to counsel to pursue discretionary review); *see*

*also United States v. Austin*, 513 U.S. 5, 8 (1994) (stating a court-appointed lawyer may only file a certiorari petition to the Supreme Court if there are meritorious grounds for certiorari review).  Rather, the granting of a petition for writ of certiorari by the Supreme Court is a matter of judicial discretion.  *See* Sup. Ct. R. 10.  Here, Kaufman in his February 9, 2017, letter advised Otano that his appeal had been denied.  He also notified Otano that his right to counsel on appeal was limited in that counsel could only assert *meritorious* claims and, in his professional judgment, he did not find "sufficient grounds for further review." (Cv. Doc. 1-1 at 1).  The Court need not second-guess counsel's judgment because the bottom line is that Otano did not have a constitutional right to counsel in seeking further appellate review.  Absent such right, he cannot assert a constitutional violation based upon his counsel's allegedly deficient performance.  *See Wainwright v. Torna*, 455 U.S. 586, 587-88 (1982).

Finally, the Eleventh Circuit has not determined whether it is ineffective assistance of appellate counsel to fail to advise a defendant of their right to petition for certiorari review by the Supreme Court.  *See Sessions v. United States*, 416 F. App'x 867, 869 (11th Cir. 2011) ("declining to address the hypothetical question of whether it might constitute ineffective assistance of counsel for an attorney to fail to advise a client of his right to file a petition for a writ of certiorari in violation of the Criminal justice Act Plan where the client asserts that he would have filed such a petition if he had been informed").  Even so, here Kaufman complied with Addendum Four, section (f)(5) of the Eleventh Circuit Plan Under the Criminal Justice Act ("section (f)(5)").

Section (f)(5) provides, in pertinent part:

> If the decision of this court is adverse to the client, counsel shall inform the client of the right to file a petition for rehearing

> or petition for rehearing *en banc* in this court, or to petition the Supreme Court of the United States for writ of certiorari. Counsel shall file a petition for rehearing, a petition for rehearing *en banc*, or a petition for a writ of certiorari **if requested to do so by the client in writing, but only if in counsel's considered judgment sufficient grounds exist**. (emphasis added).

Petitioner attaches as an exhibit the February 9, 2017, letter he received from counsel post-appeal. (Cv. Doc. 1-1). The letter evidences that Attorney Kaufman clearly advised Otano of his right to seek further review *pro se* and alternatively advised Otano that he could ask the court to appoint an attorney. (Cv. Doc. 1-1). Consequently, the letter establishes that counsel duly notified Otano of his rights and, therefore, satisfied the requirements of section(f)(5). Moreover, as noted *supra*, Otano neither alleges nor provides any evidence that he requested counsel in writing to file a petition. Based upon the foregoing, the Court denies Ground One as without merit.

**B. Ground Two**

In Ground Two, Otano asserts counsel rendered ineffective assistance in failing to provide an interpreter so that he could communicate effectively with counsel. (Cv. Doc. 1 at 5, Cv. Doc. 1 at 21-23). In support, Otano claims that after the United States Magistrate Judge appointed Attorney Kaufman as counsel, the Magistrate Judge "specifically . . . directed counsel to bring an interpreter to any meeting with Petitioner." (*Id.* at 21). Otano claims that counsel's failure to "bring a qualified interpreter" to their meetings impeded his ability "to fully and completely articulate his concerns to counsel" or "address with complete clarity any dissonance" during "any negotiations." (*Ibid.*). In addition to violating his Sixth Amendment rights, Otano asserts that this failure also

violated his Fifth Amendment right to due process of law.  (*Id.* at 22).  The Government, in response, argues the record refutes Otano's claims.  (Cv. Doc. 7 at 21).

Initially, when a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he [generally] may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."  *Tollett v. Henderson*, 411 U.S. 258, 267 (1973).  In this vein, a "guilty plea [generally] waives all nonjurisdictional defects occurring prior to the time of the plea[.]"  *Stano v. Dugger*, 921 F.2d 1125, 1150 (11th Cir. 1991) (*en banc*) (citation omitted).  This waiver "includes any claim of ineffective assistance of counsel unless the deficient performance relates to the voluntariness of the plea itself."  *Bullard v. Warden, Jenkins Corr. Ctr.*, 610 F. App'x 821, 824 (11th Cir. 2015) (citations omitted). Here, Petitioner does not contend, and the record does not reflect, that his guilty plea was unknowing or involuntary due to counsel's failure to bring an interpreter to his meetings with Petitioner.

Nonetheless, under the Court Interpreters Act, 28 U.S.C. § 1827, a trial judge has a "mandatory duty to inquire as to the need for an interpreter when a defendant has difficulty with English."  *Valladares v. United States,* 871 F.2d 1564, 1565 (11th Cir.1989). Whether a defendant is entitled to an interpreter depends on whether he "(1) speaks only or primarily a language other than the English language; and (2) this fact inhibits [his] comprehension of the proceedings or communication with counsel or the presiding judicial officer."  *United States v. Edouard,* 485 F.3d 1324, 1337 (11th Cir. 2007) (emphasis added) (quotation marks omitted).  "The appointment of an interpreter, both

under the Court Interpreters Act and as a constitutional matter, is committed to the sound discretion of the trial judge."  *Id.*

At the outset, Otano produces no evidence and nothing in the record supports Otano's claim that the United States Magistrate Judge "specifically directed counsel to bring an interpreter to any meetings."  In fact, a review of the record refutes such claim.  Otano, when represented by private counsel, filed two *ex-parte* motions for an interpreter.  (Cr. Docs. 42; 102).  The Court denied both motions without prejudice for lack of sufficient information but permitted Otano to re-file his request with the appropriate documentation.  (Cr. Docs. 44; 104).[8]  The record reflects that Otano did not supply the Court with the requested information and Otano does not allege that he provided any such information to the Court in connection with his previous motions.

After Otano rejected the May 27, 2014, signed plea agreement in open court, the Court held a hearing *in camera* on Attorney Miller's motion to withdraw and evaluated Otano for indigency status.  (Cr. Doc. 115).  The Court granted Miller's motion to withdraw and appointed Attorney Kaufman under the Criminal Justice Act ("CJA") to represent Otano.  Nowhere in the record is there evidence that the Magistrate Judge instructed newly appointed counsel to take an interpreter with him when meeting with Otano.

The CJA permits appointed counsel, subject to later review, to obtain investigative and expert services not to exceed $800 and other reasonable expenses[.]" 18 U.S.C. § 3006A(e)(2)(A)).  To authorize services under 18 U.S.C. § 3006A(e), the defendant must successfully demonstrate that (1) he is financially unable to obtain such services, and (2)

---

[8] Notably, the Court denied the motions since Otano failed to provide the Court with a financial affidavit and was represented by private counsel.

such services are "necessary for adequate representation." *United States v. Hernandez,* 743 F.3d 812, 815 (11th Cir. 2014). The record reveals that Attorney Kaufman filed an *ex parte* motion for investigative services and an *ex parte* motion for expert witness (a registered licensed pharmacist), which the Court granted. (Cr. Docs. 133, 134, 145, 146). No *ex parte* motion was filed requesting the appointment of an expert (interpreter). *See generally* docket.

Further, despite his current complaints, Otano informed the Court under oath at his change of plea hearing that he was able to effectively communicate with counsel:

> **KAUFMAN:** -- to clarify on the record. Even though Mr. Otano -- his native language is Spanish, in my opinion, because I've communicated with him quite often, he understands English as well.
>
> **THE COURT:** All right.
>
> **KAUFMAN:** Because many times I've sat with him without an interpreter and I asked him, "Do you need an interpreter? If you want, we'll get one." He says, "No, I understand. I understand." In my professional opinion and just from speaking to people in general, he fully understands. There might be a couple of words that he doesn't understand, but we get by with that. I make it more simple in the English language. But just so the Court knows -- because you're seeing him with an interpreter, but he understands English.
>
> **THE COURT:** All right. Thank you very much, Mr. Kaufman. Mr. Otano, did you hear what your lawyer just told me?
>
> **THE DEFENDANT:** Yes, I did.
>
> **THE COURT:** Okay. So is it true what he said, that you also can communicate to some extent in English?
>
> **THE DEFENDANT:** Yes. With some difficulty, but I can communicate.
>
> **THE COURT:** And you have communicated previously with your attorney, right, in English?

**THE DEFENDANT:** Yes. Yes.

**THE COURT:** And you understood those conversations?

**THE DEFENDANT:** Yes.

***

**THE COURT:** Did you receive a copy of the superseding indictment, that is, the written document setting forth the charges against you in this case?

**THE DEFENDANT:** Yes.

**THE COURT:** Has your attorney explained the charges to you?

**THE DEFENDANT:** Yes.

**THE COURT:** Have you discussed the charges and the case in general with your attorney?

**THE DEFENDANT:** Yes.

**THE COURT:** Did your attorney answer all of your questions?

**THE DEFENDANT:** Yes.

**THE COURT:** Did you explain everything you know about the case to him?

**THE DEFENDANT:** How was that?

**THE COURT:** Did you explain everything you know about the case to your attorney so he has all the information he needs to represent you?

**THE DEFENDANT:** Yes. Yes.

(Cr. Doc. 172 at 7-8, 18-19).

***

**THE COURT:** Mr. Otano, you are represented by Mr. Kaufman. Have you discussed your case fully and explained everything you know about your case to him?

**THE DEFENDANT:**  Yes.

**THE COURT:**  Have you had enough time to speak with your attorney or anyone else you care to about your case?

**THE DEFENDANT:**  Yes.

**THE COURT:**  Are you satisfied with the way your attorney— with your attorney and the way he has represented you in this case?

**THE DEFENDANT:**  Yes, Your Honor.

**THE COURT:**  Do you have any complaints about the way your attorney has represented you in this case?

**THE DEFENDANT:**  No, none.

(Cr. Doc. 172 at 59-60).

***

**THE COURT:**  Now is your last chance to speak up or ask any questions before I make my recommendation.  Do you have questions?

**THE DEFENDANT:**  No.

 (Cr. Doc. 172 at 60).

At no time during the plea colloquy did Otano allege that he was not able to effectively communicate with counsel, did not understand counsel, or had requested an interpreter when meeting with counsel.  Indeed, to the contrary, the record reveals that Otano acknowledged that he was able to communicate with counsel and understood the conversations he had with counsel.  Notably, counsel represented to the Court that on the "many" occasions he met with Otano he offered to obtain an interpreter if Otano required one, but Otano declined stating he understood counsel.  When immediately queried by the Court after counsel's representations, Otano did not deny these

representations but instead confirmed he communicated with counsel and understood the conversations. "[T]he representations of the defendant, his lawyer, and the prosecutor at [a plea] hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *Winthrop -Redin v. United States*, 767 F.3d 1210 (11th Cir. 2014) (citing Blackledge). So "when a defendant makes statements under oath at a plea colloquy, he bears a heavy burden to show his statements were false." *United States v. Rogers*, 848 F.2d 166, 168 (11th Cir. 1988) (citing *United States v. Hauring*, 790 F.2d 1570, 1571 (11th Cir. 1986)). Admittedly, while the record of the plea may be "imposing" it "is not invariably insurmountable." *Blackledge*, 421 U.S. at 75. "The critical question is whether these allegations, when viewed against the record of the plea hearing, were so palpably incredible, so patently frivolous or false as to warrant summary dismissal." *Id.* at 77 (internal quotations and citations omitted). And, important here, Otano does not assert that either he or counsel testified falsely at the plea hearing. The Court finds that Otano's current contentions, in the face of the record, to be wholly incredible.

Moreover, Petitioner does not allege, yet alone demonstrate, that there is a reasonable probability that, had counsel hired an interpreter for their private meetings, the outcome of his case would have been different. Consequently, the Court finds Petitioner's claim that counsel's failure to provide an interpreter in their meetings violated his Sixth Amendment rights to be refuted by the record and otherwise without merit.

And it is for these same reasons, Petitioner fails to set forth a Fifth Amendment due process claim based on his alleged failure to understand counsel without the aid of an interpreter. *See Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982) (holding petitioner

was not denied due process of law when the trial court declined to *sua sponte* appoint him an interpreter because he showed to have a sufficient understanding of the English language).

In passing, Otano states that counsel was "primarily focused" on receiving an additional fee "under the Criminal Justice Act" and "$10,000 to pay his investigator . . . for services that did not include interpretation[.]" (Cv. Doc. 1 at 23).[9]  In an abundance of caution, to the extent that Otano is attempting to allege that counsel had a financial conflict of interest, the Court finds the claim without merit.  "To succeed on an ineffective-assistance claim based on a conflict of interest, an appellant must show specific instances in the record that demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Caderno v. United States*, 256 F.3d 1213, 1218 (citing *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980); *United States v. Marrera*, 768 F.2d 201, 208) (7th Cir. 1985)).  "[T]he possibility of conflict is insufficient to impugn a criminal conviction." *Cuyler*, 446 U.S. at 350.  Here, Otano fails to provide any evidence of a conflict, and the record does not suggest that counsel's judgment was affected by his concern for pecuniary gain. Otano merely alleges a speculative or hypothetical conflict.  "Without a showing of actual conflicting interests, there is no constitutional violation." *Caderno*, 256 F.3d at 1219. Accordingly, Ground Two is denied as refuted by the record and otherwise without merit.

**C.  Ground Three**

In Ground Three, Otano raises various claims concerning the Government's second proposed plea agreement.  (Cv. Doc. 1 at 24).  First, Otano claims counsel erred

---

[9] The record reveals the Court authorized only the statutory maximum ($2400.00) for investigative services, not $10,000 as alleged by Petitioner.  (Cr. Doc. 142).

in failing to "fully discuss the possibilities of negotiating an adequate plea agreement" or that the United States was willing to provide a written plea agreement "that would have provided substantial benefit" to Otano. (Cv. Doc. 1 at 24-26; Cv. Doc. 9 at 12-13). In support, Otano points to a January 27, 2015, email from U.S. Attorney Lazarus to counsel which states:

> At your request, we made a rough calculation for the oxy pills for the year 2010 only. This is NOT a plea offer and this is a rough calculation and is subject to further review and change. In addition, only a written and fully approved and executed plea agreement can qualify as an offer. This is simply a rough estimate-in no way meant to be binding in any way.

> For 2010-Arcos reported 337,100 Oxy 30 and 114,3000 Oxy 15. With conversion to marijuana as USSG 2D1.1, amounts to a total of 79,244.25 kilograms of marijuana. Looking only at the drug quantity table in 2014 version of 2d1.1(c)(2) this would be a level 36 (for drug quantity only)-at least 30 kg but less than 90kg of marijuana. Again-not an offer but that's our rough estimate. As we said, if your client wants to ask us for an offer he needs to do so tomorrow as our trial prep if fully under way. Feel free to call or email to discuss.

(Cv. Doc. 1-2). Petitioner claims he was unaware of counsel's discussion with the Government or "that a tentative plea offer may be available." (Cv. Doc. 1 at 25). Instead, Otano claims that Attorney Kaufman presented him with a document entitled "Open Plea" at or about the same time that counsel was communicating with the Government. Petitioner attaches a copy of the Open Plea document to his motion. (Cv. Doc. 1-3). Otano concedes that the Open Plea document "indicated that counsel had advised Petitioner about the benefits of pleading guilty with a written plea and without a written plea," "indicated that there was in fact a written plea agreement," and stated that he "did not request a Spanish interpreter[.]" (Cv. Doc. 1 at 26). Petitioner suggests that because counsel did not provide an interpreter during this meeting when he presented him with the Open Plea document to sign, and due to "the identified language barrier and or

impediment [,]" he did not fully understand the document and suggests that this action evidences counsel's "particularly egregious" conduct. (Doc. 1 at 27).

In response, the Government asserts Otano's claim fails because he entered into a written plea agreement on May 27, 2014, but then rejected this agreement two days later in open court. (Cv. Doc. 7 at 20). Petitioner, in reply, points out that he does not challenge the May 27, 2014, plea agreement; instead, he contends that counsel failed to advise him of the second plea offer extended by the Government on February 9, 2015. (Cv. Doc. 9 at 12-13). Consequently, Respondent's response is of no assistance to the Court in this matter. Nonetheless, because the record refutes Otano's alleged facts, the Court will address this Ground without the benefit of a further response from the Government.

First, "a defendant has no right to be offered a plea[.]" *See Missouri v. Frye*, 566 U.S. 134, 148 (2012) (citing *Weatherford v. Bursey*, 429 U.S. 545, 561 (1977)); *see also Lafler v. Cooper*, 566 U.S. 156, 168 (2012)). Because "there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial." *Weatherford*, 429 U.S. at 561. And, whether to offer a plea agreement is in the sole discretion of the prosecutor and such an agreement need not be in terms favorable to a defendant. *See Weatherford*, 429 U.S. at 561; *see also* Fed. R. Crim. P. 11(c)(1) (stating "the government and the defendant's attorney . . . *may* discuss and reach a plea agreement.") (emphasis added). Consequently, to the extent that Otano claims that counsel was ineffective for failing to negotiate a plea deal, such a claim is without merit.

Second, the record demonstrates counsel did in fact *attempt* to negotiate a plea agreement on Otano's behalf. As noted *supra*, on January 27, 2015, Kaufman received

an e-mail from the government indicating it was open to negotiating a plea. (Cv. Doc. 1-2). That same day, Kaufman filed an Unopposed Motion to Extend the Date to Enter a Plea of Guilty, stating that Otano had "advised [counsel] that he has desire to enter a plea of guilty" and counsel "has advised the government of the same" and "both parties are attempting to reach a plea agreement." (Cr. Doc. 153 at 1). Because the record shows counsel in fact attempted to negotiate a second plea agreement for Otano, Petitioner's claim that counsel was deficient for failing to attempt to negotiate a plea obviously fails.

Petitioner next advances two additional other claims. (Cv. Doc. 1 at 25-26; Cv. Doc. 9 at 12-13). First, Petitioner claims Kaufman erred because he did not advise Otano that the Government was willing to offer him a plea agreement. (Cv. Doc. 1 at 25-26; Cv. Doc. 9 at 12-13). Second, Petitioner argues counsel was constitutionally deficient in failing to communicate the Government's February 9, 2015 plea offer. (Cv. Doc. 1 at 25-26; Cv. Doc. 9 at 12-13). The Court finds the record refutes both of Petitioner's claims.

In support of his claim that Kaufman failed to advise him that the government was willing to negotiate a plea deal, Otano again points to the January 27, 2015, email sent by the Government to Kaufman as evidence that the Government was willing to entertain a plea deal. (Cv. Doc. 1-2). Admittedly, "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145; *see also Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) (stating counsel has a duty to inform defendant of plea offers). And, this duty extends to informal plea offers. *See Carmichael v. United States*, 659 F. App'x 1013, 1022 (11th Cir. 2016) (citations omitted). However, as evidenced by the Government's January 27, 2015 email, the email was "NOT a plea offer." (Cv. Doc.

1-2, emphasis in the original).  Petitioner appears to argue that counsel had a duty to share the actual email with him, which Petitioner construes as indicative of the Government's willingness to negotiate a plea deal.  Petitioner fails to cite any case law in support of the proposition that counsel has a constitutionally mandated duty to share every correspondence with defendant or communicate an email which Petitioner characterizes as the Government willingness to negotiate a plea deal.  Because the Government specified that its email did **not** constitute a plea offer, Otano cannot show Kaufman rendered deficient performance by failing to appraise him of the email.  (Cv. Doc. 1-2).  Besides, Petitioner fails to show that there is a reasonable probability, but for counsel's failure to inform him of the Government's willingness to negotiate on January 27, 2015, the outcome of his case would have been different.  Consequently, Otano's claim fails.

Petitioner's second claim fares no better than the first.  Here, Otano argues that counsel failed to communicate the Government's February 9, 2015 plea offer.  (Cv. Doc. 9 at 12-13).  "When defense counsel allow[s] the offer to expire without advising the defendant or allowing him to consider it, defense counsel d[oes] not render the effective assistance of counsel the Constitution requires."  *Frye*, 566 U.S. at 145.  To demonstrate prejudice in this context, a petitioner must show a reasonable probability that (1) he would have accepted the plea offer but for counsel's ineffective assistance; and (2) the plea would have resulted in a lesser charge or a lower sentence.  *See id.* at 147.

Otano's claim fails for two reasons.  First, Kaufman's testimony at the change of plea hearing directly contradicts Otano's claim that counsel did not communicate the

Government's February offer. At the very inception of the change of plea hearing, the following exchange took place:

> **THE GOVERNMENT:** Your Honor, just for the record, the Government provided defense counsel the formal written plea offer date February 9, 2015, along with a plea offer acknowledgement form. The Government has not received a completed acknowledge form from defense counsel and requests that defense counsel confirm on the record that the Government's offer was communicated to and discussed with the defendant.

> **THE COURT:** All right. Did you hear that, Mr. Kaufman?

> **KAUFMAN:** Yes, I did, Judge; and that is correct. I conveyed the written plea offer a few times, we went over it with Mr. Otano and he decided it would be in his best interest for him to plea open. I explained the benefits versus – of an open plea versus a plea agreement and he explained to me that he fully understood the differences and that he agreed and that that's his choice.

(Cr. Doc. 172 at 3-4). Not only did Kaufman testify he communicated the Government's February 9, 2015 offer, but Otano, when given an opportunity at various stages of the proceedings to address the Court, did not assert otherwise. (Cr. Doc. 172).

Furthermore, Otano acknowledges that Kaufman presented him the Open Plea document shortly after the January 27, 2015, email. In pertinent part, the Open Plea document states:

> It is my decision to plead open because pleading open would enable me to argue at sentencing, for a lower sentence that what is being recommended to the court by the government in their written plea agreement. I want to argue about the number of Oxycodone pills that I am responsible for and that was sold illegally as opposed to being sold with a valid prescription and for a valid purpose. I do not believe I would receive any significant advantage by entering into the written plea agreement being offered by the government. I am also rejecting the government's written plea agreement

because it requires me to waive my appellate rights without providing me with any significant benefit in return.[10]

(Cv. Doc. 1-3). Consequently, even if Otano did not agree to sign the Open Plea Document, his admission that he was presented with the Open Plea document prior to entering his plea irrefutably shows that Kaufman advised him of the "government's plea agreement."

Additionally, assuming *arguendo* that Kaufman did not communicate the government's plea offer to Otano (disputed by the Court), Petitioner nonetheless fails to allege, yet alone demonstrate, prejudice. Notably, Petitioner does not indicate how the terms of the written offer extended by the government were favorable such that he would have accepted the written plea versus pleading in open court. *See Diaz v. United States*, 930 F.2d 832, 835 (11th Cir. 1991) ("Given the appellant's awareness of the plea offer, his after the fact testimony concerning his desire to pled, without more, is insufficient to establish that but for counsel's alleged advice or inaction, he would have accepted the plea offer."). Nor does Petitioner allege, yet alone demonstrate, that the government's written offer would have resulted in a lesser charge or a lower sentence. Consequently, Petitioner has not alleged nor demonstrated prejudice. Based on the totality of the record,[11] the Court finds the record affirmatively contradicts the factual averments advanced by Petitioner in support of Ground Three and finds it otherwise without merit.

---

[10] The Court notes that the initial plea agreement contained a waiver of right to appeal. (Cr. Doc. 106 at 19, ¶7). Further, at sentencing, Petitioner and counsel raised objections to the presentence report "relating to the amount or quantity of the medication," *inter alia.* (Cr. Doc. 221 at 5-7).

[11] Although not dispositive, the Court has considerable reservations about Petitioner's creditability given that Petitioner advanced virtually identical arguments against his second counsel, Attorney Miller, resulting in Miller filing a motion to withdraw and

**D. Ground Four**

In his final ground, Otano alleges counsel rendered ineffective assistance by failing to contact and inform the Government of his willingness to cooperate so that he could receive a more lenient sentence. (Cv. Doc. 1 at 28). Petitioner contends he made counsel aware of certain information that he could provide to the Government but again assails counsel's failure to provide an interpreter at the meeting to fully understand the value of the information and debrief Petitioner. The Government argues that as evidenced by the initial plea agreement (subsequently withdrawn by Otano), and as evidenced by Otano's wife's executed plea agreement, Petitioner failed to establish he had knowledge of interest to the Government. (Cv. Doc. 7 at 21).

As noted above, Petitioner again fails to allege that his guilty plea was unknowing or involuntary. To the extent that Petitioner again faults counsel for failing to bring an interpreter to the meeting when Otano relayed the information that he believed was of interest the Government, the Court rejects the claim for the same reasons set forth in the Court's opinion regarding Ground Two as more fully discussed *supra*. Further, Otano fails to identify the specific information that constituted favorable evidence to the Government to warrant counsel convincing the Government that a downward departure was warranted in his case. But even if Petitioner had identified this information, the Government was under no obligation to accept Petitioner's offer. It is well settled that the Government retains the discretion to seek a reduced sentence based upon cooperation. *United States v. Courtois*, 131 F.3d 937, 938 (10th Cir. 1997). Otano fails to show a

---

requesting a hearing on his motion. Further, Petitioner had previously withdrew his acceptance to the Government's initial written plea agreement.

reasonable probability that, but for Kaufman's failure to inform the government of Petitioner's willingness to cooperate, his sentence would have been different. See *Thornton v. United States,* 2009 WL 2905890, *5, 12 (C.D. Cal. 2009) (finding that counsel was not ineffective for not requesting government to allow his client to cooperate, because [the] government already was aware of defendant's desire to cooperate, but concluded that he had no helpful information); *see also United States v. Roldan,* 1994 WL 57678, *2, 3 (5th Cir. 1994) (affirming denial of claim of ineffective assistance of counsel where defendant received a sentence below sentencing guidelines range and the government did not indicate it needed defendant's cooperation). Consequently, the Court denies Ground Four as without merit.

Accordingly, it is now **ORDERED:**

1. Petitioner's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Cr. Doc. 232; Cv. Doc. 1) is **DENIED**. To the extent Petitioner moves for an evidentiary hearing (Cv. Doc. 9 at 3; Cv. Doc. 9 at 8) or the appointment of counsel, such motions are **DENIED**.

2. Petitioner's Motion for Bond Pending Decision (Cr. Doc. 233) is **DENIED as moot.**[12]

3. The Clerk is **DIRECTED** to enter judgment accordingly, terminate any pending motions, and close this case.

4. The Clerk is **DIRECTED** to docket this Opinion and Order in the criminal file at 2: 13-cr-89-FtM-38CM and terminate any pending motions therein.

---

[12] On December 26, 2018, Petitioner filed a Motion for Bond pending this Court's ruling on his 2255 motion. (Cr. Doc. 233). Considering the Court's decision to deny Otano's 2255 motion, his motion for bail is now rendered moot.

**IT IS FURTHER ORDERED: A CERTIFICATE OF APPEALABILITY (COA) AND LEAVE TO APPEAL *IN FORMA PAUPERIS* ARE DENIED.** A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. *See* 28 U.S.C. § 2253(c)(1); *see also Harbison v. Bell*, 556 U.S. 180, 183 (2009). "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(B)(2). To make such a showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citations omitted). Petitioner has not made the requisite showing in these circumstances. Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

      **DONE** and **ORDERED** in Fort Myers, Florida this 22nd day of January, 2019.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

FTMP-1
Copies: All Parties of Record